

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRENDA BENN,

    Petitioner,

v.                                                              CRIMINAL ACTION NO. 2:17-cr-30(1)

UNITED STATES OF AMERICA,

    Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court are *pro se* litigant Brenda Benn's ("Petitioner") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to Title 28, United States Code, Section 2255 ("2255 Motion"). Having reviewed the motions and filings, the Court finds that a hearing is not necessary to address Petitioner's motions. *See* 28 U.S.C. § 2255(b). For the reasons set forth below, Petitioner's 2255 Motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

From July 2009 to February 2014, Petitioner was engaged in a conspiracy with her two co-defendants, Kevin and Stephanie Towns, to file fraudulent individual income tax returns. ECF No. 15 at ¶¶ 1, 7. Petitioner was the owner and manager of A Plus Tax Service, LLC ("A Plus") and the manager of NN Financial ("NNF"). *Id.* at ¶ 2. As the administrator of both companies, Petitioner "was primarily responsible for the administrative functions associated with operating the businesses, including, but not limited to, paying the employees, paying the operating costs, and entering into contracts with vendors and contractors." *Id.* at ¶ 4. While the her co-conspirators were in charge of preparing the tax returns, with the help of several subordinate preparers, Petitioner supervised all of them in their role as employees. *See id.* at ¶ 6.

1

Petitioner and her co-defendants used various methods to enlarge individuals' tax returns and taught these techniques to the subordinate preparers. *Id.* at ¶¶ 8–14. Petitioner also negotiated a contract with Santa Barbara Tax Product Group ("SBTPG"), which processed the tax returns and would take out the fees for itself, A Plus, and NNF. *Id.* at ¶ 15–16. During the time of the conspiracy, Petitioner's businesses processed false tax returns that totaled $1,683,159 in tax losses. *Id.* at ¶ 17.

On February 23, 2017, Petitioner was named in a seventeen-count Indictment that charged her with one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, and one count of Aiding the Preparation of False Tax Returns, in violation of 26 U.S.C. § 7206(2). ECF No. 1. On August 24, 2017, Petitioner pled guilty to both counts before Magistrate Judge Douglas Miller. ECF Nos. 50–54. In the presentence report, the probation officer attributed a four-level enhancement to Petitioner for being the leader of the conspiracy. ECF No. 77 at ¶ 14. Petitioner's counsel noted an objection to this enhancement. *Id.* at 16. However, in the sentencing position paper, Petitioner's counsel did not raise this objection. ECF No. 80 at 2. On December 6, 2017, the Court accepted Petitioner's guilty plea as a knowing and voluntary plea and sentenced her to fifty-seven months of imprisonment and to pay $1,683,159 in restitution to the United States. ECF Nos. 82–84.

On October 22, 2018, Petitioner filed her 2255 Motion. ECF Nos. 88–89. Petitioner raises three claims that her attorney was ineffective because (1) he did not move to dismiss the Indictment because it was past the statute of limitations; (2) he did not object to the four-level enhancement for a leadership role in the offense; and (3) he did not object to the loss she owes for restitution. ECF No. 89 at 3–6. On October 23, 2018, the Court ordered the Government to
2

respond. ECF No. 90. On December 7, 2018, the Government filed its response. ECF No. 91. Petitioner had an opportunity to file a reply but did not do so. *See* ECF No. 90.

## II. LEGAL STANDARDS

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999). However, an individual may raise a procedurally defaulted claim if he/she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93.

To demonstrate cause and prejudice, a petitioner must show the errors "worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

**B. Ineffective Assistance of Counsel**

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* In order to demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688.

"Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic, tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

### C. Guilty Pleas' Effect on 2255 Motions and Ineffective Assistance of Counsel Claims

Guilty pleas are "'grave and solemn act[s] to be accepted only with care and discernment.'" *United States v. Moussaui*, 591 F.3d 263, 278 (4th Cir. 2010) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). As such, when a defendant makes a knowing and voluntary guilty plea, that person "'waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea.'" *Id.* at 279 (quoting *United States v. Bundy*, 392 F.3d 641, 644 (4th Cir. 2004)).

Moreover, a guilty plea generally limits collateral attacks to "whether the plea was counseled or voluntary." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1295 (4th Cir. 1992) (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)). As such, a claim of ineffective assistance prior to the guilty plea may undermine that plea. *See id.* However, claims of ineffective assistance when there is a guilty plea on the record must meet a higher burden beyond the normal *Strickland* requirements. When there is a guilty plea, in order to satisfy the prejudice prong, a defendant must show that but for counsel's ineffective assistance, he would not have pled guilty and would have gone to trial. *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Furthermore, any statements made under oath are binding on the defendant,

5

including any statements that confirm satisfaction of counsel. *Fields*, 956 F.2d at 1299 (citing *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977)).

## III. DISCUSSION

### A. Failure to Move to Dismiss Indictment Because It Violated Statute of Limitations

Petitioner first argues that her attorney was ineffective because he did not move to dismiss the Indictment against her under the theory that it violated the statute of limitations. ECF No. 89 at 3. She claims that her last overt act in the conspiracy was in 2011, and because the crime has a five-year statute of limitations, the Indictment should have been dismissed. ECF No. 88 at 4, ECF No. 89 at 3.

First, while it is true that there is a general five-year statute of limitations on federal crimes, 18 U.S.C. § 3282, criminal tax cases, such as filing fraudulent tax returns, are subject to a six-year statute of limitations. 26 U.S.C. § 6531(3). Moreover, the statute of limitations does not begin to run until the statutory due date, which for individual tax returns would be April 15 of the following year. *See* 26 U.S.C. §§ 6072(a); 6513(a). And conspiracy to commit tax crimes are given the same six-year statute of limitations. *See United States v. Vogt*, 910 F.2d 1184, 1201 (4th Cir. 1990) (citation omitted); *United States v. Lowder*, 492 F.2d 953, 955–56 (4th Cir. 1974), *cert. denied*, 419 U.S. 1092 (1974); *see also United States v. Grimm*, 738 F.3d 498, 501 (2d Cir. 2013) (citation omitted). As such, Petitioner's counts are both subject to the six-year, rather than the five-year, statute of limitations.

Second, Petitioner misunderstands how statute of limitations apply to conspiracy counts. The statute of limitations for conspiracy "runs from the last overt act during the existence of the conspiracy." *Fistwick v. United States*, 329 U.S. 211, 216 (1946) (citing *Brown v. Elliott*, 225 U.S. 392, 401 (1912); *United States v. Head*, 641 F.2d 174, 177 (4th Cir. 1981) (citing *United*

*States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976)). However, the defendant does not have to be the one to commit the last overt act; once someone joins, he or she continues to be a member of said conspiracy until he or she withdraws. *Smith v. United States*, 568 U.S. 106, 107 (2013).

Petitioner here does not argue that she ever withdrew from the conspiracy. Therefore, the last overt act of the conspiracy occurred on January 17, 2012, when Stephanie Towns prepared a false tax return for the 2011 year. ECF No. 1 at ¶ 38. The statute of limitations for the conspiracy count began to run on April 15, 2012 and expired on April 15, 2018. Because the Indictment was filed on February 23, 2017, this count was not barred by the statute of limitations.

As for Petitioner's second count, the Indictment charges that she aided in preparing a false tax return on January 19, 2011 for the year 2010. ECF No. 1 at 10–11. The statute of limitations began on April 15, 2011 and expired on April 15, 2017. Again, the Indictment was filed within the statute of limitations. Therefore, Petitioner's attorney did not provide ineffective assistance by failing to move to dismiss the Indictment on this ground.

**B. Failure to Object to the Leadership Enhancement**

Next, Petitioner argues that her attorney "abandoned" her because he did not object to the four-level leadership enhancement. ECF No. 89 at 4–5. In support, Petitioner provides an email from her attorney stating that he would object to the enhancement on November 16, 2017. ECF No. 89-1 at 2. The November 21, 2017 presentence report noted the attorney's objection. ECF No. 77 at 16. However, in the position paper, Petitioner's attorney did not object to the enhancement and stated:

> [Petitioner] did, initially, indicate that she objected to the four (4) point enhancement for her role in the offense, mainly because it is [her] position that her co-defendants, and specifically, Kevin Towns, were more culpable in the sense that Kevin Towns

7

> possessed the technical knowledge necessary to carry out the
> scheme and purpose of the conspiracy, and that [Petitioner] was
> less sophisticated in this regard. While [she] continues to maintain
> this is true, she recognizes that she is just as responsible for her co-
> defendant's actions as her own and that the conduct Kevin Towns
> engaged in should have been and was actually foreseeable to her.

ECF No. 80 at 2. Her attorney nonetheless requested a sentence for thirty-seven to forty-six months, which would have been the Federal Sentencing Guidelines ("Guidelines") range if she did not have the leadership enhancement. *Id.*; *see* U.S.S.G. Sentencing Table. At the sentencing hearing, neither side objected to any parts of the presentence report. ECF No. 87 at 3:13–20.

Section 3B1.1(a) of the Guidelines provides that a defendant will receive a four-level enhancement if he or she "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." This is distinct from a manager or supervisor, who would receive a three-level enhancement. U.S.S.G. § 3B1.1(b). The factors used to distinguish these roles include:

> [T]he exercise of decision making authority, the nature of
> participation in the commission of the offense, the recruitment of
> accomplices, the claimed right to a larger share of the fruits of the
> crime, the degree of participation in planning or organizing the
> offense, the nature and scope of the illegal activity, and the degree
> of control and authority exercised over others.

*Id.* at cmt. n.4.

Petitioner argues that the Government provided no evidence to support the enhancement. ECF No. 89 at 4–5. However, in the Statement of Facts, Petitioner admits (1) she was the owner and manager of A Plus and the manager of NNF, ECF No. 52 at ¶ 2; (2) she was the administrator of both companies, which involved paying all the employees and negotiating contracts, *Id.* at ¶ 3; (3) she supervised all the subordinate preparers, *Id.* at ¶ 6; (4) she taught the subordinate preparers the methods she and her co-conspirators used to falsify the tax returns, *Id.* at ¶ 13; and (5) she contracted with SBTPG to process the tax returns and take the fees for A Plus and NNF. *Id.* at ¶

15–16. Moreover, the presentence report notes that there were eight employees at A Plus and NNF combined. ECF No. 77 at ¶ 11. The government is not required to present evidence demonstrating the accuracy of facts in the presentence report, and "[w]ithout an affirmative showing the information is inaccurate, the court is 'free to adopt the findings of the [presentence report] without more specific inquiry or explanation.'" *United States v. Terry,* 916 F.2d 157, 162 (4th Cir. 1990) (quoting *United States v. Mueller,* 902 F.2d 336, 346 (5th Cir. 1990)).

Therefore, it is erroneous to claim that there is no factual basis for the enhancement. These facts are sufficient to support the four-level enhancement. As the owner and manager of A Plus and the manager of NNF, Petitioner had the ultimate decision-making authority in the conspiracy. She actively participated in the conspiracy, teaching the techniques needed to further it along. And as the administrator of both companies, she had control and authority over everyone else, with the responsibility to pay them.

Relatedly, Petitioner also received a three-level reduction for acceptance of responsibility. ECF No. 77 at ¶ 16. However, if Petitioner "falsely denie[d], or frivolously contest[ed], relevant conduct that the [C]ourt determines to be true," the Court may have found that such actions contradicted her acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. n.1(A). Arguably, if Petitioner attempted to argue against the leadership enhancement, in the face of these facts, this may have contradicted her acceptance of responsibility. Therefore, it would be a reasonable legal strategy to avoid undermining the acceptance of responsibility three-level reduction and not object to the four-level leadership enhancement. As such, her attorney's conduct does not constitute deficient performance under *Strickland.*

## C. Failure to Object to the Amount of Loss for Restitution

Finally, Petitioner argues that her attorney was ineffective because he did not object to the loss amount calculated that she must pay for restitution and that she should only pay for the restitution for the overt conduct directly attributed to her. ECF No. 89 at 5. This argument, too, is erroneous.

Once a person joins a conspiracy, he or she is liable for all foreseeable criminal conduct of all other co-conspirators until he or she withdraws. *United States v. Newsome*, 322 F.3d 328, 338 (4th Cir. 2003); *see also Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946). Restitution is based solely "upon losses directly and proximately caused by the defendant's offense conduct." *United States v. Squirrel*, 588 F.3d 207, 215 (4th Cir. 2009) (citing 18 U.S.C. § 3663A(a)(1)–(2)). When there is more than one defendant, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

Petitioner was convicted of conspiracy and was liable for all criminal conduct of the conspiracy and all restitution that flowed therefrom. *See Squirrel*, 588 F.3d at 207; *Newsome*, 322 F.3d at 338. The Statement of Facts that Petitioner signed states that the loss amount is $1,683,159, which covers the entire offense conduct of the conspiracy. ECF No. 53 at ¶ 17. The Court, in its discretion, made all three co-conspirators jointly liable for the total amount of restitution. ECF Nos. 66, 70, 83. Therefore, Petitioner's attorney did not fall below the *Strickland* standard by failing to object to the restitution amount.[1]

---

[1] Petitioner also argues that the restitution amount should be reduced based on conduct she claims falls outside the statute of limitations. ECF No. 89 at 5. Based on the reasoning in Part III.A, *supra*, the Court rejects this argument.

10

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it is clear from the pleadings and filings that Petitioner is not entitled to relief. Accordingly, Petitioner's 2255 Motion is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims contradict the record and do not have any basis in law. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that she may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
January _10_, 2019

/s/
Raymond A. Jackson
United States District Judge

11